## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| IN RE:<br><br>SERVICE ONE, LLC<br><br>DEBTOR | CASE NO. 22-40503<br>CHAPTER 7 |
| MARK A. WEISBART, CHAPTER 7 TRUSTEE<br><br>PLAINTIFF<br>V.<br><br>PATRICK S. SCHULTZ<br><br>DEFENDANT | ADVERSARY NO. |

## COMPLAINT AND OBJECTION TO PROOF OF CLAIM

Mark A. Weisbart, the Chapter 7 Trustee of Service One, LLC (the "Trustee") in the above-referenced bankruptcy case, files this *Complaint and Objection to Proof of Claim*.  In support of the claims asserted and relief sought herein, Plaintiff alleges as follows:

### I. PARTIES

1.    Plaintiff is the duly appointed and acting Chapter 7 Trustee for the bankruptcy estate of Service One, LLC and in such capacity has standing to bring the claims and seek the relief asserted herein.

2.    Defendant Patrick S. Schultz ("Schultz" or "Defendant") is an individual who, upon information and belief, resides at 4321 Belvedere Dr, Plano, TX 75093-6966.  Service of process on Schultz may be effectuated by serving a copy of the Complaint and the summons directed to Schultz at the aforementioned address by United States first class mail, postage prepaid.

### II. JURISDICTION AND VENUE

3.    This Court has jurisdiction to hear this adversary proceeding pursuant to 28 U.S.C.

§§ 157 and 1334, and the Order of Reference for the United States District Court for the Eastern District of Texas.

4.      This adversary proceeding is commenced pursuant to Rules 3007(b) and 7001(1) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and 11 U.S.C. §§ 502, 548 and 550.

5.      This is a core proceeding under 28 U.S.C. §§157(b)(2)(A), (B), (C), (E), (K) and (O).

6.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### III. PROCEDURAL BACKGROUND

7.      On April 21, 2022 (the "<u>Petition Date</u>"), a voluntary petition was filed on behalf of Service One, LLC (the "<u>Debtor</u>") under Subchapter V of chapter 11 of the Bankruptcy Code (the "<u>Bankruptcy Code</u>").

8.      Thereafter, Mark A. Weisbart was appointed the Subchapter V Trustee pursuant to section 1183 of the Bankruptcy Code.

9.      At the time of the Petition Date, the Debtor operated a construction business primarily involved in the remodel and renovation of single-family homes for clients operating in the "single family rental space."

10.      By Order entered on April 29, 2022 [Doc 35], the Court granted the Removal Motion and vested the Trustee with authority to operate the Debtor's business and manage its assets in accordance with 11 U.S.C. § 1183(b)(5).[1] Thereafter, the Trustee managed and operated

---

[1] Due to disputes between the Sandra Perry and Charles Tomasello ("<u>Tomasello</u>"), two of the Debtor's members, the Debtor on April 25, 2022, filed its *Motion to Remove the Debtor from Possession and Authorize Subchapter V Trustee to Operate the Business of the Debtor* [Doc 14] (the "<u>Removal Motion</u>") seeking to be removed as a debtor in possession pursuant to section 1185 of the Bankruptcy Code and requesting that the Trustee be authorized to manage and operate the Debtor's business pursuant to section 1183(b)(5).

the Business until December 4, 2023, when the Court entered its *Order Granting Trustee's Motion to Convert Case to Chapter 7* converting this case to a case under Chapter 7.[2]

11.     Thereafter, the Trustee was appointed the interim chapter 7 trustee and has since become the permanent chapter 7 trustee.

## IV. FACTUAL BACKGROUND

12.     For several years prior to the Petition Date Schultz served as the Debtor's Chief Operating Officer.

13.     In August 2020, the Debtor and Schultz purportedly entered a certain Employment Agreement dated August 19, 2020 (the "Agreement"). The Agreement provided Schultz an annual salary of $78,000 for 2020 and $90,000 beginning on January 1, 2021.

14.     On May 19, 2022, Schultz filed a proof of claim asserting an unsecured claim in the amount of $326,244.57 (the "Amount"), denoted on the Court's claim register as Claim 7-1 which has since been amended twice by proofs of claim denoted as Claim 7-2 and 7-3 (as amended, the "Claim"). A true and correct copy of Claim 7-3 is attached hereto as Exhibit "A."

15.     As the Claim reflects, the Amount purportedly due Schultz is attributable to the following categories:

| BASIS FOR CLAIM | AMOUNT |
|---|---|
| Unpaid W-2 Wages (6 days @ $319.02 per day) | $1,914.12 |
| Unpaid Paid Time-off (PTO) – 20 days | $6,380.40 |
| Profit Share 2021 (full year) | $243,841.00 |
| Profit Share Q1 - 2022 | $74,109.05 |
| Profit Share Q2 – 2022 (thru 4/8) | tbd |
| **Total Claim Amount**: | **$326,244.57** |

---

[2] See, *Order Granting Trustee' Motion to Convert Case to Chapter 7* [Doc 226].

16.     Schultz asserts that $15,150.00 of the Amount consists of a priority claim for wages, salaries or commissions pursuant to Section 507(a)(4) and that the balance constitutes a general unsecured claim.

17.     Schultz's claim to a "profit share" (the "Profit Share Obligations") is based on the following provisions of the Agreement:

> For Dallas - Fort Worth metroplex market, Schultz shall be paid bonus as percentage or net profit on an annual basis for each calendar year. The bonus shall be paid by the 15th of January of the following calendar year. The bonus payout is to be structured as follows: Sandra Perry will receive first 50% payout of net profits until Sandra Perry paid back initial investment capital. The remaining 50% payout will be divided equally in four ways with 25% divided to: Charles Tomasello, Sandra Perry, Ron Ramos, and Employee
>
> i.   Deferred profit share payment - for purposes of maintaining company's operating cash flow, Schultz agrees that an aggregate sum of $250,000 from all parties is necessary for operating purposes. This sum can be adjusted higher if a mutually agreed upon higher amount for company's operating purposes. Any contribution amount by Schultz would still be deemed to be the profit share allocation.
>
> ii.  No interest will be charged for profit share deferment.
>
> iii. The sum of $250,000 (or a higher mutually agreed upon amount) is the aggregate company amount estimated for the whole company and not the sole responsibility of Schultz's profit share allocation.
>
> iv.  Any termination of Schultz employment would require that accrued deferred profit share be paid out within 30 days.
>
> v.   For purposes of clarity, an example is as follows: if net profits for calendar year 2020 were to be $800,000. Sandra Perry would receive an initial payment of $400,000 (or 50%). The remaining $400,000 profit would be allocated 25% to Sandra Perry, Charles Tomasello, Ron Ramos, and Patrick Schultz (or $100,00 per party). Of the $400,000 profit, the sum of $250,000 (or $62,500 per party) would be held in company bank accounts for use as operating cash. The remaining $150,000 would be divided by 25% (or $37,500 per party) and paid out as cash payments to Sandra Perry, Charles Tomasello, Ron Ramos, and Patrick Schultz.

18.     At the time the Agreement was entered by the Debtor, Schultz, in his capacity as the company's Chief Operating Officer, was an insider.

19.     The Debtor's profit and loss statement for 2021 reflects that its net profit (on a cash basis) for that year was $997,263.70 (the "2021 Net Profit").[3] Based on the Agreement's formula above, assuming Schultz is entitled to any profit share for 2021, the maximum amount he would have been entitled to was $62,157.96,[4] since, upon information and belief, the balance of Perry's investment in the Debtor, as of the Petition Date, totaled $717,012.04.

20.     The sole support for Schultz's entitlement to a profit share for the first quarter of 2022 (the "2022 Profit Share") is a profit/loss statement for the month of January 2022.   No documentation is provided to support a profit share for the second quarter of 2022.

## V.  CAUSES OF ACTION

### COUNT ONE - AVOIDANCE OF OBLIGATION UNDER 11 U.S.C. § 548(a)(1)(B)

21.     Plaintiff re-incorporates the allegations contained in Paragraphs 1 through 20 of this Complaint as though set forth in full herein.

22.     The Debtor entered the Agreement within two years of the Petition Date.  In doing so, the Debtor incurred the Profit Share Obligations to or for the benefit of Schultz, an insider, under an employment contract.

23.     In exchange for incurring the Profit Share Obligations to Schultz under the Agreement the Debtor received less than a reasonably equivalent value in exchange for those obligations.

---

[3] The Debtor used the cash basis for tax return purposes.

[4] This amount is derived as follows:

        $997,263.70 - Service One Net Profit
               x .50 - Perry 50% payout
        $498,631.85 - Profit Balance
        -$250,000.00 - less operating expenses of Service One
        $248,631.85 - Available Allocable Profit
               x .25 - Schultz Percentage
         $62,157.96 - Schultz Profit Share

24.     Accordingly, the Profit Share Obligations incurred by the Debtor to Schultz under the Agreement are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

25.     Thus, Trustee is entitled to judgment against Schultz avoiding the Profit Share Obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

<u>COUNT TWO - OBJECTION TO CLAIM</u>

26.     Plaintiff re-incorporates the allegations contained in Paragraphs 1 through 25 of this Complaint as though set forth in full herein

27.     Trustee objects to the Claim on the following bases:

28.     First, the Trustee objects to the Claim for unpaid PTO in the sum of $6,380.40 as the Agreement does not provide Schultz compensation for PTO and no other document attached to the Claim provides for same.

29.     Second, the Trustee objects to the Claim to the extent it asserts a priority claim under Section 507(a)(4) that exceeds Schultz's unpaid wages in the sum of $1,914.12. Entitlement to a "profit share" does not constitute wages, salaries or commissions for purposes of Section 507(a)(4).

30.     Third, to the extent the Profit Share Obligations are not avoidable as requested above, the Trustee requests that the Profit Share Obligations be recharacterized as an equity interest and be disallowed as a claim pursuant to Section 502 of the Bankruptcy Code.  Alternatively, and to the extent such portion of the Claim is not recharacterized, the Trustee objects to the amount identified as Profit Share Obligations as there is insufficient documentation that supports the amount claimed.

31.     Fourth, the Trustee objects to the portion of the Claim based on a 2022 Net Profit Share as (i) there is insufficient documentation supporting same, and (ii) any such amount is not due under the Agreement.

## VI. PRAYER

WHEREFORE, Mark A. Weisbart, the Chapter 7 Trustee, Plaintiff, prays that this Court grant the following relief:

1.      Judgment declaring that the Profit Share Obligations are avoided pursuant to 11 U.S.C. § 548(a)(1)(B);

2.      Judgment that the claimed priority claim does not exceed $1,914.12;

3.      Judgment disallowing the Claim to the extent it asserts a claim for amounts due based on PTO;

4.      Judgment recharacterizing the Profit Share Obligations as an equity interest or, alternatively, disallowing excessive amounts sought as a 2021 Net Profit Share and all amounts sought as a 2022 Net Profit Share; and

5.      Judgment granting the Trustee such other and further relief the Court deems just and proper.

<div style="margin-left:40%;">

Respectfully Submitted,

/s/ James S. Brouner
Mark A Weisbart
Texas Bar No. 21102650
James S. Brouner
Texas Bar No. 03087285
HAYWARD PLLC
10501 N Central Expy, Suite 106
Dallas, Texas 75231-2203
(972) 755-7107 Phone/Fax
MWeisbart@haywardfirm.com
JBrouner@haywardfirm.com

COUNSEL FOR CHAPTER 7 TRUSTEE, PLAINTIFF

</div>